UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22694-CIV-ALTONAGA/Reid

**ARNE MIJNE**,

    Plaintiff,
v.

**EXPERIAN INFORMATION
SOLUTIONS, INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Experian Information Solutions, Inc.'s Motion for Summary Judgment [ECF No. 36], filed on March 4, 2024. Plaintiff, Arne Mijne, filed Responses [ECF Nos. 39, 45];[1] to which Defendant filed a Reply [ECF No. 60]. The Court has considered the record, the parties' written submissions, and applicable law.[2] For the following reasons, the Motion is granted.

## I. BACKGROUND

In April 2023, Plaintiff applied online for a credit card with non-party Wells Fargo Bank, N.A. ("Wells Fargo"). (*See* SOF ¶¶ 3–4; Resp. SOF ¶¶ 3–4; *see generally* Compl. [ECF No. 1]). As part of that application, Plaintiff entered his name, address, and social security number. (*See*

---

[1] Plaintiff submitted two Responses: a Rule 56(d) Opposition to Defendant's Motion for Summary Judgment [ECF No. 39] ("Resp."), filed on March 18, 2024 and, without explanation, an untimely and largely identical document [ECF No. 45] ("Second Resp."), filed on March 21, 2024. With the second filing, Plaintiff also filed an accompanying Statement of Disputed Facts [ECF No. 46]. The Court entered an Order [ECF No. 54], finding that Plaintiff's Statement of Disputed Facts did not comply with the Local Rules and requiring Plaintiff to file a compliant statement. (*See id.* 2).

[2] The parties' factual submissions include Defendant's Statement of Undisputed Material Facts [ECF No. 37] ("SOF"); Plaintiff's Statement of Disputed Facts [ECF No. 58] ("Resp. SOF"); and Defendant's Reply Statement of Facts [ECF No. 61] ("Reply SOF").

SOF ¶ 5; Resp. SOF ¶ 5). Wells Fargo sent Plaintiff's application information to Defendant, a credit reporting agency. (*See* SOF ¶¶ 2, 33–35; Resp. SOF ¶¶ 2 (not disputing that Defendant is a credit reporting agency), 33–35).

"As a credit reporting agency," Defendant "compiles personal and financial information about individual consumers to create consumer reports." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 419 (2021). Defendant "then sells those consumer reports for use by entities such as" Wells Fargo "that request information about the creditworthiness of individual consumers." *Id.* Defendant is under contract with Wells Fargo to provide "information regarding consumers attempting to secure credit." (SOF ¶ 30 (citations omitted); *see* Resp. SOF ¶ 30). Consequently, when Plaintiff applied for a credit card, Wells Fargo provided Defendant with Plaintiff's name, address, and a social security number to create a consumer report about Plaintiff. (*See* SOF ¶¶ 33–35; Resp. SOF ¶¶ 33–35); *see TransUnion*, 594 U.S. at 419.

There was just one problem: the social security number Wells Fargo provided was not Plaintiff's, but rather one that was two digits off from Plaintiff's social security number (the "Transmitted Social Security Number"). (*See* SOF ¶ 35; Resp. SOF ¶ 35; Mot. 6).[3] Plaintiff disputes who is responsible for that mistake. (*See* Resp. SOF ¶¶ 25, 37). But he concedes it was Wells Fargo that provided the Transmitted Social Security Number, rather than his true social security number, to Defendant. (*See* SOF ¶¶ 7–8, 35, 42; Resp. SOF ¶¶ 7–8, 35, 42; Resp. 11).

Defendant provided Wells Fargo a credit report in response to its request regarding Plaintiff's credit application.[4] (*See* SOF ¶ 36; Resp. ¶ 36). As part of its process for compiling

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[4] The parties spill much ink regarding Defendant's "Fraud Shield," a "product suite" that "offers information to [Defendant]'s clients to assist them with detecting identity theft." (SOF ¶ 19 (citations

Plaintiff's consumer report, Defendant compared the Transmitted Social Security Number to death records provided by the Social Security Administration, known as the "Limited Access Death Master File" ("LADMF"), and found a perfect match for the Transmitted Social Security Number. (*See* SOF ¶¶ 13, 38; Resp. SOF ¶¶ 13, 38).

Since the Transmitted Social Security Number was associated with a dead person, Defendant sent a report to Wells Fargo stating: "INPUT [SOCIAL SECURITY NUMBER] RECORDED AS DECEASED." (SOF ¶ 39 (capitalization in original; alteration added; citations omitted); *see* Resp. SOF ¶ 39). Defendant's report also stated that there was a potential social security number mismatch between Plaintiff and the Transmitted Social Security Number; the Transmitted Social Security Number was recorded as that of a deceased person; Plaintiff's age was younger than the age associated with the Transmitted Social Security Number; and there was a high probability the Transmitted Social Security Number belonged to a person who was not Plaintiff. (*See* SOF ¶ 43; Resp. SOF ¶ 43).

Plaintiff subsequently received a letter from Wells Fargo telling him that it was "unable to approve [his] credit card account application for the following reason[]: Credit bureau report shows consumer status as deceased." (SOF ¶ 10 (alteration adopted; other alterations added); *see also* SOF ¶ 45; Resp. SOF ¶¶ 10, 45). As a result of these events, Plaintiff brings one claim against Defendant under the Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.* ("FCRA"), which "regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *TransUnion*, 594 U.S. at 418; (*see* Compl. ¶¶ 5, 77–84). Defendant now moves for final summary judgment. (*See generally* Mot.).

---

omitted; alteration added); *see* SOF ¶¶ 17–29, Resp. SOF ¶¶ 17–29; *see also* Resp. 8, 11–15). Because it is unnecessary to address the Fraud Shield product to resolve Defendant's Motion, the Court will not delve into the product or the parties' descriptions of it.

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (alteration added; quotation marks omitted; citing Fed. R. Civ. P. 56(c)(1)).

## III.  DISCUSSION

Defendant argues it is entitled to summary judgment on Plaintiff's sole claim. (*See generally* Mot.). Rather than respond to the substance of Defendant's arguments, Plaintiff contends he is entitled to relief under Federal Rule of Civil Procedure 56(d). (*See* Resp. 9–15).

The Court considers the parties' arguments in turn, concluding, first, that Plaintiff does not meet his burden under Rule 56(d); and second, that Defendant is entitled to summary judgment.

***Plaintiff's Rule 56(d) Opposition.*** Federal Rule of Civil Procedure 56(d) allows a court to defer or deny a motion for summary judgment or allow additional time for discovery when "a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition[.]"[5]  Fed. R. Civ. P. 56(d) (alterations added).  A brief procedural background is necessary here.

On August 8, 2023, the Court entered a Scheduling Order that directed the parties to complete discovery by February 5, 2024.  (*See* Scheduling Order [ECF No. 10] 2).  Rather than responsibly and timely engage in discovery, Plaintiff did not complete his written discovery and document production until January 2, 2024, and he waited until December 2023 and January 2024 to give Defendant notices of depositions.  (*See* Joint Motion to Extend Discovery [ECF No. 23] 1).  As a result, the parties filed a Joint Motion to Extend Discovery on January 19, 2024.  (*See id.*).

The Court denied this first Motion, as the parties made no mention of Federal Rule of Civil Procedure 16(b)(4) or its demanding standard that a scheduling order "may be modified only for good cause and with the judge's consent." (Jan. 22, 2024 Order [ECF No. 24] 1 (quoting Fed. R. Civ. P. 16(b)(4))).  The parties' "conclusory assertions [fell] woefully short of showing how the parties exercised the required diligence to meet the Scheduling Order's deadlines." (*Id.* 2 (alteration added)).  The Court reminded the parties that, as the Scheduling Order indicated, they were free to extend the discovery deadline by agreement. (*See id.* 3 n.1).

---

[5] Plaintiff's Responses were not accompanied by an affidavit or declaration.  (*See generally* Resp.; Second Resp.).  He eventually supplied one after the Court entered an Order [ECF No. 54] providing him a one-time window in which to do so.  (*See generally* Resp. SOF, Ex. A, Decl. [ECF No. 58-1]).

5

Undeterred, Plaintiff filed a nearly identical motion requesting the Court extend the discovery cut-off the day of the discovery deadline, February 5, 2024. (*See* Unopposed Motion to Extend Discovery [ECF No. 26]). The Court denied this second Motion for the same reasons given in the January 22, 2024 Order. (*See* Feb. 6, 2024 Order [ECF No. 27]). Once again, the Court reminded the parties that they were free to extend the discovery deadline by agreement. (*See id.* 2 n.2). Upon Defendant filing its timely Motion for Summary Judgment, Plaintiff uses his opposition to Defendant's Motion to attempt to relitigate the denials of the requested extensions of the Scheduling Order. (*See generally* Resp.; *see also* Jan. 22, 2024 Order; Feb. 6, 2024 Order).

Plaintiff styles his Response a Rule 56(d) Opposition to the Motion for Summary Judgment. (*See generally* Resp.). Under Rule 56(d), "[t]he court may defer consideration of the [summary judgment] motion, deny it, allow time to obtain affidavits or declarations or to take discovery, or issue any other appropriate order. The court's decision is discretionary and depends in large part on whether the parties had ample time and opportunity for discovery." *Black Box Royalties, Inc. v. Universal Music Publ'g, Inc.*, 839 F. App'x 346, 349 (11th Cir. 2020) (alterations added; quotation marks and citations omitted). "To invoke rule 56(d), a party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, but must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (quotation marks and citations omitted).

Plaintiff's reliance on Rule 56(d) fails. First, Plaintiff had ample opportunity — six months — to conduct discovery in this factually and legally straightforward case. Second, his Response and Declaration fail to specifically demonstrate why the Court should defer or delay ruling on

6

Defendant's Motion.

Plaintiff contends he has not had a "real opportunity" to conduct discovery. (Resp. 1). He wholly fails to persuade.

By way of comparison, *Black Box Royalties* illustrates just how hollow Plaintiff's complaint about having an insufficient opportunity to take discovery is. There, the plaintiff had four months to complete discovery yet failed to comply with the district court's discovery deadlines (even after a partial extension). *See* 839 F. App'x at 347–48. When the defendant in *Black Box Royalties* moved for summary judgment, the plaintiff made the same argument as Plaintiff makes here, seeking to reopen discovery and defer judgment on the summary judgment motion. *See id.* at 348. The Eleventh Circuit held that the plaintiff "had ample time and opportunity for discovery[,]" thus dooming his Rule 56(d) motion. *Id.* at 349 (alteration added; quotation marks and citation omitted).

As in *Black Box Royalties*, the Scheduling Order here was clear. *See id.* at 348; *see also id.* at 349 ("The fact that [the parties] may have asked for a longer period does not cloud the clarity of the court's scheduling order[.]" (alterations added)). Again, the *August 8, 2023* Scheduling Order directed the parties to complete discovery by *February 5, 2024*. (*See* Scheduling Order 2). The Court allowed Plaintiff six months to conduct discovery concerning a single, uncomplicated claim against a single Defendant. Plaintiff's choice to play fast and loose with the Court's deadline "does not excuse [his] failure to conduct discovery or present evidence in opposition to summary judgment." *Black Box Royalties*, 839 F. App'x at 348 (alteration added). Plaintiff's lack of diligence is not a basis for the Court to deny or delay consideration of Defendant's Motion.

Further, Plaintiff's Declaration fails "to specifically demonstrate how discovery would show a genuine issue of fact." *Burns*, 999 F.3d at 1334 (quotation marks and citation omitted).

7

Instead, the Declaration is largely a re-hashing of the twice denied motions seeking to amend the Scheduling Order without satisfying the necessary showing of diligence. (*See* Decl.; *see* Jan. 22, 2024 Order; Feb. 6, 2024 Order). The Court thus has "all the information necessary to rule on the legal issues, and[, as will be seen, Plaintiff has] raised no genuine question of material fact that [could] preclude[] summary judgment." *Burns*, 999 F.3d at 1334 (alterations added; quotation marks and citation omitted).

For the foregoing reasons, Plaintiff's Rule 56(d) request for postponement is denied. The Court turns to the merits of Defendant's Motion for Summary Judgment.

**Summary Judgment.** Plaintiff brings one claim against Defendant, asserting it violated 15 U.S.C. section 1681e(b). Section 1681e(b) of the FCRA requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.*

"[T]o make out a claim for a violation of [section] 1681e(b), a plaintiff must show at least two things: that a consumer report was inaccurate and that the inaccurate report caused him to suffer damages." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (alterations added; citation omitted). "[A]bsent those showings — particularly the inaccurate report — the reasonableness of the reporting agency's procedures turns out not to matter." *Id.* (alteration added; citation omitted). Defendant argues that Plaintiff fails at the first step because the report Defendant provided Wells Fargo "complied with the 'maximum possible accuracy' standard of [section] 1681e(b)." *Id.* (alteration added); (*see also* Mot. 13–19).

Before the Court can evaluate the accuracy of Defendant's report, it first must determine whether a genuine dispute of material fact exists as to whether the inaccurate Transmitted Social Security Number originated with Defendant. On this front, Plaintiff contradicts himself. First, he

repeatedly concedes that *Wells Fargo*, not Defendant, provided the Transmitted Social Security Number — not his social security number — to Defendant. (*See* SOF ¶¶ 35, 38, 42; Resp. SOF ¶¶ 35, 38, 42). Despite these concessions, Plaintiff also confusingly asserts that "[Defendant] prepared a report about Plaintiff where [Defendant] replaced Plaintiff's [social security number] with the [social security number] belonging to another consumer, who passed away in 2013."[6] (Resp. SOF ¶¶ 25, 37 (alterations added; citations omitted)).

The Court concludes it is undisputed that Defendant received, rather than replaced, the Transmitted Social Security Number. When Plaintiff disputes a fact, he must support the purported factual dispute with specific citations to the record. *See* S.D. Fla. L.R. 56.1(a)(2); *id.* at 56.1(b)(2)(C). Plaintiff's citations to wholesale documents in the record do not support his statements that Defendant "replaced" the correct social security number with the Transmitted Social Security Number. *See, e.g.*, *Howell v. Baldwin Cnty. Bd. of Educ.*, No. 20-cv-502, 2024 WL 265874, at *15 (S.D. Ala. Jan. 24, 2024) ("It is not the task of this Court to scour the record to find evidence in support of the parties' positions." (citations omitted); *Chavez v. Sec., Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (noting "appellate judges are not like pigs, hunting for truffles buried in briefs[, and] district court judges are not required to ferret out delectable facts buried in a massive record" (alteration added; quotation marks and citation omitted)). Neither do the exhibits Plaintiff cites support his assertion. (*See* SOF, Ex. E, Application Screen Prints [ECF No. 37-5] (displaying Plaintiff's personal information and the Transmitted Social Security Number); SOF, Ex. J, Screen Grab [ECF No. 37-10] (showing that the Transmitted Social Security Number was associated with a deceased person)).

---

[6] This allegation does not appear in Plaintiff's Complaint. (*See generally* Compl.).

Ultimately, Plaintiff's statements are "conclusory and self-serving declarations . . . offered in an attempt to create a genuine issue of material fact . . . [S]uch declarations lack any probative value and are insufficient as a matter of law." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (alterations added).  Even viewing the evidence in the light most favorable to Plaintiff, he has "offer[ed] only conjecture or speculation" that Defendant replaced his social security number. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1196 (11th Cir. 2024) (alteration added). "[S]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id.* (alteration added; emphasis in original; quotation marks and citation omitted).  Without more, and especially considering Plaintiff's concessions, the Court will not find that Plaintiff's bare-bones speculative statements create a genuine dispute of any material fact.

Having concluded that Defendant received the Transmitted Social Security Number, the Court turns to whether the resulting report was inaccurate.  "[T]o violate the maximal accuracy standard" of the FRCA, a credit report "must be factually incorrect, objectively likely to mislead its intended user, or both[.]" *Erickson*, 981 F.3d at 1252 (alterations added).  The Court easily concludes Defendant's report was neither.  There was nothing inaccurate about Defendant reporting to Wells Fargo that the Transmitted Social Security Number was associated with a dead person; Defendant's report identified, correctly, that the "INPUT [SOCIAL SECURITY NUMBER WAS] RECORDED AS DECEASED."  (SOF ¶ 39 (capitalization in original; alteration added); *see also* SOF ¶¶ 35, 38, 42; Resp. SOF ¶¶ 35, 38–39, 42).

Contrary to what Plaintiff seems to suggest (*see, e.g.*, Compl. ¶ 11; Resp. 11), Defendant never reported that Plaintiff *himself* was deceased, only that the Transmitted Social Security Number was associated with someone who was deceased.  "Simply put, the report was what it said

it was" — when Defendant compared the Transmitted Social Security Number to the LADMF records, there was a perfect match, and Defendant correctly reported that match to Wells Fargo. *Erickson*, 981 F.3d at 1252; (*see also* SOF ¶¶ 13, 38, 44; Resp. SOF ¶¶ 13, 38, 44). It never claimed anything else, nor did the report contain any inaccurate statements about the Transmitted Social Security Number or Plaintiff.

Neither was Defendant's report objectively misleading. A report is only misleading under the FCRA if it is "so misleading that it is objectively likely to cause the intended user to take adverse action against its subject[.]" *Erickson*, 981 F.3d at 1252 (alteration added). In deciding whether a report is objectively misleading, the "report must be reviewed and considered in its entirety, instead of focusing on a single field of data." *O'Neal v. Equifax Info. Servs., LLC*, No. 21-cv-80968, 2021 WL 4989943, at *2 (S.D. Fla. Oct. 27, 2021) (quotation marks and citation omitted; collecting cases); *see also Erickson*, 981 F.3d at 1252 (explaining that "the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading").

As noted, Defendant's report simply indicated that the Transmitted Social Security Number was recorded as belonging to a deceased person; not that Plaintiff was dead. (SOF ¶ 23; *see* Resp. SOF ¶ 23). Further, Defendant's report noted there was a high probability that the Transmitted Social Security Number belonged to another person. (*See* SOF ¶ 43; Resp. SOF ¶ 43). In other words, the report suggested only that the application contained the wrong social security number and Wells Fargo may wish to investigate the applicant further. "A reasonable user of the report standing in the shoes of" Wells Fargo would not be misled into thinking otherwise. *Erickson*, 981

11

F.3d at 1253. Defendant's report was neither inaccurate nor objectively misleading, so Plaintiff's "case goes no further." *Erickson*, 981 F.3d at 1251.[7]

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant, Experian Information Solutions, Inc.'s Motion for Summary Judgment **[ECF No. 36]** is **GRANTED**. Final judgment will issue by separate order. All pending motions are denied as moot.

**DONE AND ORDERED** in Miami, Florida, this 16th day of April, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[7] Plaintiff makes much of Wells Fargo's actions in response to the report, positing that Wells Fargo denied his application "based upon the contents" of what Defendant's credit report said about Plaintiff. (Compl. ¶ 66; *see also* Resp. 3). But "[h]ow third-party companies choose to utilize algorithms to decipher the accurate information reported by Defendant has no bearing on the accuracy of the report itself." *O'Neal*, 2021 WL 4989943 at *3 (alteration added). Here, Defendant's report was accurate, and Wells Fargo's handling of that accurate report does not create liability for Defendant.